IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **CORY DONN KELLISON,**  §<br>§<br>**Plaintiff,** §<br>§<br>v. §<br>§<br>**WILLIAM J. WHEAT, RALEIGH W.** §<br>**BREEDEN, KIRT D. STIEFER, GENA P.** §<br>**HARRIS, URSULA A. WALDROP,** §<br>**BRIAN COLLIER, EXECUTIVE** §<br>**DIRECTOR, TDCJ; AND THE OFFICE** §<br>**OF THE ATTORNEY GENERAL OF** §<br>**TEXAS, AS AMICUS CURIAE,** §<br>§<br>**Defendants.** | **CIVIL ACTION NO. 6:21-CV-00312-JCB** |

### REPORT AND RECOMMENDATION OF
### UNITED STATES MAGISTRATE JUDGE

Plaintiff Cory Donn Kellison, an inmate confined at the Michael Unit within the Texas Department of Criminal Justice ("TDCJ"), proceeding *pro se* and *in forma pauperis*, filed this civil rights action alleging that Defendants used excessive force, denied him access to the court, and retaliated against him arising out of an incident on September 24, 2020. (Doc. No. 20, at 4, 6–7.) The case was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case. For the reasons stated herein, the court **RECOMMENDS** that Plaintiff's civil rights action be **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1).

### BACKGROUND

1

On August 11, 2021, Plaintiff Cory Donn Kellison filed his original complaint against Defendants William J. Wheat, Raleigh W. Breeden, Kirt D. Stiefer, Gena P. Harris, and Ursula A. Waldrop alleging that Defendants used excessive force, denied him access to the court, tampered with his mail, and retaliated against him. (Doc. No. 1.) On December 1, 2021, the court ordered Plaintiff to file an amended complaint to clarify the basis of his retaliation claim against Defendants. (Doc. No. 12.) On January 27, 2022, Plaintiff filed his amended complaint, which is the live complaint in this action. (Doc. No. 20.)

In his amended complaint, Plaintiff states that TDCJ employees physically assaulted him, failed to document the assault, attempted to cover up the assault, intentionally housed him with COVID-19 patients, selectively processed his grievances, tampered with privileged mail, and falsified state documents in retaliation for using the grievance process. *Id.* at 3. He alleges that on September 24, 2020, he was physically assaulted by several TDCJ employees in the Coffield Unit, which resulted in a bone protruding from his wrist. *Id.* at 4. Plaintiff further alleges that he attempted to file a grievance for the September 24, 2020 use of force incident on October 5, 2020, but it was never processed. *Id.* He contends that TDCJ refused to process several of his grievances, denying him access to the court. *Id.* Plaintiff states that he was arrested on November 2, 2020, placed with Covid-19 positive inmates, and denied medical treatment in retaliation for filing a grievance concerning the September 24, 2020 use of force incident. *Id.* at 6. He alleges that TDCJ informed him that he was placed in restrictive housing due to an incident on September 2, 2020 that never happened. *Id.* Plaintiff contends that he attempted to seek redress but his attempts have been thwarted because the TDCJ mailroom employees have repeatedly tampered with his legal mail. *Id.* He also claims he has been denied access to his medical records to prove his excessive force claim and denied employee rosters to identify who was involved in the September 24, 2020

2

use of force incident. *Id.* at 6–7. Plaintiff seeks protection from TDCJ, $5,000,000 in damages, the names of the TDCJ employees who assaulted him, and a separation of powers within TDCJ but not controlled by TDCJ to protect inmate rights. *Id.* at 4.

On April 21, 2022, the court ordered officials at TDCJ and University of Texas Medical Branch ("UTMB") to direct and undertake a review of Plaintiff's claims concerning the September 24, 2020 use of force incident, and ordered that a written report be submitted to the court, including Plaintiff's medical records, grievance records, and classification records, as well as any other records, incident reports, or investigations concerning claims in this action. (Doc. No. 24.)

On July 19, 2022, the Office of the Attorney General filed a written report ("*Martinez* Report") summarizing Plaintiff's medical records and attaching his medical records in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (cited with approval in *Parker v. Carpenter*, 978 F.2d 190, 191 & n.2 (5th Cir. 1992)). (Doc. No. 34.) The Office of the Attorney General also included an affidavit of Lisa Lopez, Senior Manager of Health Information Management at UTMB, establishing the records submitted with the written report as business records of TDCJ. (Doc. No. 34-2, at 2.) On August 4, 2022, Plaintiff filed a response to the *Martinez* Report. (Doc. No. 36.)

The court has conducted an independent review of Plaintiff's medical records contained in the *Martinez* Report. Based on that review, the court finds that the *Martinez* Report accurately summarizes the contents of Plaintiff's medical records, treatment, and grievances.

**LEGAL STANDARD**

Under 28 U.S.C. § 1915A, a court shall review, before docketing if feasible or in any event as soon as practicable after docketing, any complaint in a civil action where a prisoner seeks redress from a governmental entity or officer, or employee of a governmental entity. During its

3

review, the court must identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

A complaint fails to state a claim upon which relief may be granted when it does not allege sufficient facts which, taken as true, state a claim that is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v, FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is **not** akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556 (emphasis added).

Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414, 416 (5th Cir. 2012) (unpublished) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id.*

Furthermore, the Fifth Circuit has repeatedly upheld the District Court's use of a *Martinez* Report to develop the known facts of a case until it is satisfied that either the claims have merit or they do not:

> Due to potential abuses by prisoners proceeding in forma pauperis, this circuit has given district courts broad discretion in making the determination of whether an in forma pauperis complaint is frivolous. As we have noted before, it is not always easy to determine whether a claim is frivolous simply by examining a complaint written by a prisoner unfamiliar with the rules of our courts. Prisoner complaints, more often than not, are difficult to decipher. However, this court has insisted that when it is not apparent from the face of the complaint whether the prisoner's contentions are frivolous or not, the district court should make an effort to develop the known facts until satisfied that either the claims have merit or they do not. We have suggested that this may be done in a number of ways.

*Parker*, 978 F.2d at 191 (citing *Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986)) (internal citations omitted). The Fifth Circuit has explained that ordering prison officials to investigate the facts surrounding an inmate's complaint enables the district court to determine frivolity. *See Parker*, 978 F.2d at 193 n.2 ("In addition, this circuit cited with approval the procedure developed by the Tenth Circuit: ordering the prison officials to investigate the facts surrounding a civil rights suit by inmates to construct 'an administrative record . . . to enable the trial court to . . . make a determination [of frivolity] . . . .'") (quoting *Cay*, 789 F.2d at 323.) The Fifth Circuit, in *Cay*, explained that "expansion of the record protects the unskilled litigant and enables the court to make an informed decision regarding the merits of an action by reference to the reality of the situation rather than by speculating as to the nature of the claim." *Cay*, 789 F.2d at 324 (quoting *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983)).

## DISCUSSION

a.) <u>Excessive Force Claim</u>

In his amended complaint, Plaintiff alleges that on September 24, 2020, TDCJ employees used excessive force by physically beating and assaulting him, resulting in a bone protruding from his wrist. (Doc. No. 20, at 4.)

The Fifth Circuit has stated that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hamer v. Jones*, 364 F. App'x 119, 123 (5th Cir. 2010) (unpublished) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

In order for an excessive force claim to stand, "the force used and the injury must be more than *de minimis* and must be evaluated in the context in which the force was deployed." *Wilson v. Buster*, 433 F. App'x 238, 240 (5th Cir. 2011) (unpublished). The Fifth Circuit considers five nonexclusive *Hudson* factors to determine whether the plaintiff has stated a claim for excessive force: "(1) the extent of injury suffered by an inmate[,] (2) the need for application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response." *Comeaux v. Sutton*, 496 F. App'x 368, 370 (5th Cir. 2012) (unpublished) (quoting *Hudson*, 503 U.S. at 7) (internal quotation marks omitted).

The *Hudson* factors, however, do not "affect the rule that requires proof of injury, albeit significant or insignificant." *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999) (citing *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993)). The Fifth Circuit has repeatedly held that, "some physical injury is an indispensable element of an Eighth Amendment excessive force claim." *Gomez*, 163 F.3d at 923 (emphasis omitted).

While a minor, insignificant injury does not preclude the finding of an excessive force violation, the Fifth Circuit has emphasized that an inmate must have suffered more than a *de minimis* injury. *See id.* For example, the Fifth Circuit held that an inmate's sore and bruised ear that lasted for three days, resulting from an officer twisting the inmate's ear, was *de minimis* and thus insufficient to provide a basis for a meritorious civil rights lawsuit. *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) ("However, the Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'") (quoting *Hudson*, 503 U.S. at 10). Similarly, the Fifth Circuit found that mere discomfort and swelling to an inmate's wrists—for which he did not seek medical attention—was not cognizable under Section 1983. *See Williams v. Stevens*, 192 F.3d 127, 1999 WL 684145 (5th Cir. 1999) (unpublished).

Conversely, in *Gomez*, the Fifth Circuit found that injuries consisting of pain, cuts, scrapes, and contusions to the face, head, and body that resulted from an inmate being knocked down as well as punched and kicked, requiring medical treatment, were more than *de minimis*. *See Gomez*, 163 F.3d at 924–25. In *Gomez*, there was evidence that prison officials knocked the prisoner down, scraped his face against the concrete floor, repeatedly punched him in the face for about five minutes, and then kicked him in the face and head. *Id*.

These cases comport with the Supreme Court's caveat in *Hudson* that not every touch by prison officials constitutes excessive force:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.3d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes

7

>from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Hudson*, 503 U.S. at 9–10.

Here, the medical evidence shows that Plaintiff, if anything, suffered a *de minimis* injury from the September 24, 2020 use of force incident. (Doc. No. 34-1, at 2–5.) The affidavit of Dr. Monte K. Smith, D.O. identifies that a chemical agent was released during the use of force incident on September 24, 2020. *Id.* at 3. The use of force report completed that same day indicates that Plaintiff complained of "hurting on the inside" but denied respiratory difficulty. *Id.* at 11. The nurse observed that Plaintiff had "no visible injuries or respiratory distress" and suffered "no adverse health effects from the use of force." *Id.* Further examination later that evening revealed that he had no current health complaints and no cuts, bruises, or sores. *Id.* at 13. On September 28, 2020, Plaintiff submitted a sick call request complaining of severe back pain from the September 24, 2020 use of force incident, but his request was determined to be non-urgent due to Covid-19 concerns. *Id.* at 15. On November 8, 2020, Plaintiff submitted another sick call request, requesting to be evaluated for back and wrist pain from the September 24, 2020 use of force incident. *Id.* at 19. Plaintiff complained of a hard lump on his left wrist that had been present since September 24, 2020. *Id.* On November 23, 2020, a physician's assistant identified a small, firm nodule on Plaintiff's left wrist. *Id.* Plaintiff's hand was otherwise unremarkable. *Id.* An examination of Plaintiff's back was normal. *Id.* at 19–20. The physician's assistant prescribed Plaintiff Motrin and ordered an X-ray for his left wrist. *Id.* at 20. Plaintiff's wrist was X-rayed on November 25, 2020. *Id.* at 21. The X-ray revealed that Plaintiff's wrist was normal and "no acute bony abnormality" existed. *Id.*

In his response to the *Martinez* Report, Plaintiff contends that TDCJ failed to document his true medical condition because his body was "one big sore" from the chemical agent deployed in

his cell and the record only confirms what his left wrist injury is not, not that the injury does not exist. (Doc. No. 36, at 2–3.) Plaintiff requests a different medical opinion and treatment from outside of TDCJ. *Id.* at 3.

Plaintiff's response to the *Martinez* Report is the first time he alleges any injury arising from the chemical agent. But Plaintiff fails to provide any evidence to support an injury arising from the chemical agent in his grievances attached to his response. Nor do his medical records contained in the *Martinez* Report reflect that he complained of or suffered any injury from the chemical agent. (Doc. No. 34-1, at 11, 13.) While courts have found that using pepper spray "in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain" is a violation of the Eighth Amendment, "the use of pepper spray is certainly not a per se violation of the Eighth Amendment, even where the targeted inmate is locked in his cell." *Vizcayno v. Michael Unit*, No. 6:18cv440, 2020 WL 5536504, at *7 (E.D. Tex. July 26, 2020) (citations omitted). Because Plaintiff's medical record shows that he sustained no injuries from the chemical agent, any claim that use of the chemical agent constituted excessive force necessarily fails. Additionally, despite Plaintiff's contention otherwise, his medical record shows that his left wrist was normal after the September 24, 2020 use of force incident. (Doc. No. 34-1, at 21.) His X-ray revealed no acute fracture or dislocation, no bone abnormality, no focal soft tissue abnormality, and that his joint spaces were preserved. *Id.*

Plaintiff's medical record supports that he did not suffer any injuries from the September 24, 2020 use of force incident. The court therefore finds that Plaintiff did not sustain an injury as required in *Gomez*, and thus fails to state a claim upon which relief may be granted. In the alternative, assuming *arguendo* that Plaintiff sustained some injury affecting his back and left wrist from the September 24, 2020 use of force incident, the court finds that such injury is *de minimis*

9

and fails to state a claim upon which relief may be granted. Thus, the court finds that Plaintiff has failed to state a claim for excessive force.

      b.) <u>Access to Court Claim</u>

Plaintiff next alleges that TDCJ employees repeatedly tampered with his legal mail and refused to process his grievances from the September 24, 2020 use of force incident, denying him access to the court. (Doc. No. 20, at 3–7.) He contends that TDCJ's lack of grievances on file concerning the September 24, 2020 use of force incident further supports his claim that he has been denied access to the court. (Doc. No. 36, at 2.)

The right of inmates to send and receive mail has been the subject of extensive litigation over the years. The rules governing TDCJ correspondence were initially developed as part of the Guajardo class action lawsuit. *See Guajardo v. Estelle*, 580 F.2d 748 (5th Cir. 1978). Among other things, prison officials were prohibited from opening legal mail except in the presence of the inmate to whom the letter was addressed. *Id.* at 757–59.

The Fifth Circuit subsequently re-analyzed these rules in light of *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Fifth Circuit held "that the violation of the prison regulation requiring that a prisoner be present when his incoming legal mail is opened and inspected is not a violation of a prisoner's constitutional rights." *Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993). With respect to outgoing legal mail, the Court held that a plaintiff may have a claim if prison officials opened and removed material, thereby preventing it from ever arriving at court. *Id.* at 825–26. When the case came back a second time, the Fifth Circuit affirmed the dismissal of the claim after it was determined that the removal of the item did not prejudice the plaintiff's legal position. *Brewer v. Wilkinson*, 68 F.3d 470, 1995 WL 581939, at *1 (5th Cir. 1995) (unpublished).

The Supreme Court has also held that an inmate alleging denial of access to court must demonstrate actual injury stemming from the defendant's unconstitutional conduct. *Lewis v. Casey*, 518 U.S. 343, 351–54 (1996). The inmate must show more than the inability to file a claim in order to proceed with his lawsuit; instead, he must identify a "nonfrivolous," "arguable," legal claim that was hindered by the defendant's actions. *Id.* at 353 & n.3; *see also Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (same). The Fifth Circuit has accordingly held that an inmate must show "that a nonfrivolous legal claim ha[s] been frustrated or [is] being impeded." *Driggers v. Cruz*, 740 F.3d 333, 337 (5th Cir. 2014) (citing *Lewis*, 518 U.S. at 353). The Fifth Circuit has routinely rejected denial of access to court claims due to the absence of a showing of prejudice. *Every v. Jindal*, 413 F. App'x 725, 727 (5th Cir. 2011) (unpublished); *Widner v. Aguilar*, 398 F. App'x 976, 980 (5th Cir. 2010) (unpublished); *Damm v. Cooper*, 288 F. App'x 130, 131–32 (5th Cir. 2008) (unpublished).

In the present case, Plaintiff alleges that Defendants have tampered with his legal mail. (Doc. No. 20, at 3.) He contends that TDCJ is not processing his grievances nor responding to his record requests and his mail is not reaching the proper destination. (*Id.* at 4, 6–7; Doc. No. 20-4.). He attaches his unprocessed grievances and record requests to his amended complaint. (Doc. Nos. 20-3; 20-4, 20-6.) Plaintiff has not, however, alleged facts showing that his legal position has been prejudiced by Defendants' actions, nor has he identified a nonfrivolous, arguable legal claim contained within this action. Without more, the court's consideration of Plaintiff's instant action necessarily defeats his claim that TDCJ employees have denied him access to the court here. Plaintiff's claim that TDCJ denied him access to the court by tampering with his legal mail should therefore be dismissed due to his failure to show harm stemming from Defendants' conduct.

Furthermore, Plaintiff cannot succeed on the merits of a claim for failure to process his grievances or for violations of TDCJ policy. Inmates have liberty interests only in "freedom[s] from restraint . . . impos[ing] *atypical* and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 472 (1995)). Inmates do not have a federally protected liberty interest in having grievances addressed and resolved to their satisfaction. *See id.* at 372, 374 (holding that the inmate did not have a protected liberty interest in having a grievance against mail room and security staff of prison, for allegedly withholding and ultimately losing some of his mail, resolved to his satisfaction). Moreover, an inmate does not have a constitutional entitlement to adequate grievance procedures. *See, e.g.*, *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding that there is no constitutional right to participate in grievance procedures); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430–31 (7th Cir. 1996) (holding that any right to inmate grievance procedure is procedural, not substantive and thus, a state's inmate grievance procedures do not give rise to liberty interest protected by due process clause); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (holding that "the federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure"). Although an adequate grievance procedure is a condition precedent to filing a suit arising under Section 1983, *see* 42 U.S.C. § 1997e(a), its ineffectiveness or altogether absence does not give rise to a constitutional claim. Thus, TDCJ's alleged failure to process his grievances does not amount to a constitutional violation. Plaintiff therefore fails to state a claim that Defendants have denied him access to the court.

 c.) <u>Retaliation Claim</u>

Plaintiff alleges that TDCJ employees retaliated against him for filing a grievance concerning the September 24, 2020 use of force incident. (Doc. No. 20, at 3, 6.) He contends that TDCJ retaliated against him by refusing to process his grievances, placing him in restrictive housing, and fabricating the incident that resulted in his restrictive housing placement. *Id.* at 6.

To state a claim for retaliation under Section 1983, a plaintiff must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the inmate for his exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Spann v. Strain*, 726 F. App'x 265, 266 (5th Cir. 2018) (unpublished); *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999). The law is well established that prison officials may not retaliate against an inmate who exercises his right of access to the court. *Ruiz v. Estelle*, 679 F.2d 1115, 1153 (5th Cir.), *opinion amended in part and vacated in part*, 688 F.2d 266 (5th Cir. 1982); *Campbell v. Beto*, 460 F.2d 765, 768 (5th Cir. 1972). Officials likewise may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). The plaintiff must allege more than just his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). The inmate must also show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Accordingly, he must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id.* Finally, the alleged retaliatory act must be more than a *de minimis* act to rise to the level of a constitutional violation. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006).

Here, Plaintiff's allegations do not amount to more than his subjective belief that he was the victim of retaliation. Plaintiff alleges that TDCJ employees retaliated against him for filing a

13

grievance concerning the September 24, 2020 use of force incident, but admits that the grievance went unprocessed. (Doc. No. 20, at 4, 6.) The copy of his grievance attached to his amended complaint does not contain any markings, comments, or acknowledgement of receipt by TDCJ. (Doc. No. 20-3, at 2–3.) And TDCJ does not have a grievance from Plaintiff on file concerning the September 24, 2020 use of force incident as evidenced by the *Martinez* Report. Thus, TDCJ employees could not have retaliated against Plaintiff for filing a grievance that they never received nor processed. Plaintiff has not produced evidence of motivation for the alleged retaliatory acts nor alleged a chronology of events from which retaliation may be plausibly inferred. Plaintiff therefore fails to state a claim for retaliation.

## CONCLUSION

For the foregoing reasons, the court **RECOMMENDS** that Plaintiff's civil rights action be **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1).

Within fourteen days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 23rd day of March, 2023.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE